Case 4:20-cv-01328   Document 56   Filed on 04/11/22 in TXSD   Page 1 of 5

United States District Court
Southern District of Texas
**ENTERED**
April 11, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HIWOT GREEN, § § § § § § § § § § | |
| Plaintiff. | |
| VS. | CIVIL ACTION NO. 4:20-cv-01328 |
| THE KROGER CO., ET AL., | |
| Defendants. | |

## ORDER AND OPINION

Before me is a discovery dispute that reared its head at a deposition on April 5, 2022. For the reasons that follow, I **SUSTAIN** Defendants' objections to Plaintiff's requested line of questioning.

## BACKGROUND

Plaintiff Hiwott Green ("Green") is a former employee of Kroger Texas L.P. ("Kroger"). In this lawsuit, Green claims that Kroger discriminated against her based on certain disabilities, namely diabetes and carpal tunnel syndrome. As is the case in nearly all employment-related discrimination cases, Green filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). After being notified of the EEOC charge, Kroger prepared and submitted a Position Statement to the EEOC. The parties' discovery dispute concerns the creation of that Position Statement.

According to the parties, Kroger's Position Statement was created and signed by Michael Marino ("Marino"), a manager within Kroger's human resources department. Marino's deposition, which brought about this dispute, occurred on April 5, 2022. Marino testified that he prepared the Position Statement working in conjunction with Kroger's inside counsel. To prepare the Position Statement, Marino interviewed witnesses and reviewed documents at the direction of Kroger's inside counsel.

During Marino's deposition, Green's counsel began to inquire about certain details underlying Marino's investigation. Specifically, what documents he reviewed, whom he interviewed, and what was said in those interviews. Kroger objected to this line of inquiry, relying on the work-product and attorney-client privileges. Green disagreed, arguing the privileges do not apply to this situation.

Based on this disagreement, the parties contacted the Court to help resolve their dispute. To be clear, this discovery dispute does not focus on the Position Statement itself. After all, there is no question that the Position Statement is discoverable since EEOC procedures specifically provide for the release of Position Statements and non-confidential attachments to a charging party or her representative upon request. *See* http://www.eeoc.gov/eeoc/newsroom/release/position_statement_procedures.cfm. The parties instead ask me to decide whether the investigation underlying the creation of the Position Statement is subject to the work-product and attorney-client privileges.

I now enter the fray.

## WORK-PRODUCT PRIVILEGE

Established by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work-product doctrine is now codified in Federal Rule of Civil Procedure 26. Under Rule 26, a party ordinarily may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing of substantial need and an inability to obtain their substantial equivalent without undue hardship. FED. R. CIV. P. 26(b)(3)(A).

"The purpose of the work product privilege is to further the interests of clients and the cause of justice by shielding the lawyer's mental processes from his adversary." *In re Grand Jury Subpoena*, 220 F.3d 406, 408 (5th Cir. 2000) (cleaned up). In this regard, the work-product privilege does not just act to shield *documents* created in anticipation of litigation but may also extend to shield

materials used or uncovered during any investigation required to prepare such documents. *See, e.g.*, *Wolff v. Biosense Webster, Inc.*, No. EP-17-CV-00328-PRM, 2018 WL 3795302, at *4 (W.D. Tex. Aug. 8, 2018) (applying work-product privilege and explaining "materials gathered in response to an EEOC charge are created in anticipation of litigation, because an administrative inquiry is already underway" (quotation omitted)); *Farzan v. Wells Fargo Bank*, No. 12 CIV. 1217 RJS JLC, 2012 WL 6763570, at *2 (S.D.N.Y. Dec. 28, 2012) (applying work-product privilege to "documents arising from [the company investigator's] conversations with [company] employees, and any other information that she may have gathered," where the company investigator was a non-lawyer, working under the supervision of the company legal department); *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, No. 1:08-CV-173, 2009 WL 1543651, at *7 (N.D. Ind. June 2, 2009) ("the work-product doctrine will generally apply with respect to an internal investigation that is undertaken in anticipation of litigation, whether it is conducted by counsel or by other agents of the corporation"); *Kayata v. Foote, Cone & Belding Worldwide, LLC.*, No. 99 Civ. 9022(VM)(KNF), 2000 WL 502859, at *3 (S.D.N.Y. Apr. 26, 2000) (upholding work-product privilege where documents were obtained during an internal investigation conducted under the supervision of counsel after plaintiff filed an EEOC charge). Nonetheless, "the work product doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client, and the doctrine excludes materials assembled in the ordinary course of business." *United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 WL 1031154, at *3 (E.D. Tex. Mar. 15, 2016) (cleaned up).

"The burden of demonstrating the applicability of the work product privilege rests on the party seeking its protection." *Heckman v. TransCanada USA Servs., Inc.*, No. 3:18-CV-00375, 2020 WL 211037, at *2 (S.D. Tex. Jan. 13, 2020).

\*\*\*

My analysis is straightforward. It is undisputed that Marino investigated and prepared the Position Statement while working with Kroger's inside legal counsel.

3

It is also undisputed that this was not done in the ordinary course of business; rather, it was done specifically to respond to the Charge of Discrimination Green filed with the EEOC. As explained by one court, an investigation flowing from an EEOC Charge of Discrimination is "clearly in anticipation of litigation" because "its purpose [i]s to prepare [a] response to the EEOC charge[]." *Treat*, 2009 WL 1543651, at *7 (collecting cases). And, as explained by another court, "[w]ork product that is exempt from discovery includes: interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and other work done by an attorney [or under an attorney's direction] on behalf of the client's litigation." *Atomanczyk v. Tex. Dep't of Crim. Just.*, No. CV H-17-0719, 2018 WL 560228, at *4 (S.D. Tex. Jan. 24, 2018) (quotation omitted). Given the facts before me, I find that that the investigation underlying Kroger's Position Statement is covered by the work-product privilege.[1]

## ATTORNEY-CLIENT PRIVILEGE

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). Its purpose is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). In federal question cases such as this one, federal common law determines the scope of the attorney-client privilege. *See In re EEOC*, 207 Fed. App'x 426, 431 (5th Cir. 2006).

The Fifth Circuit defines the elements of the federal common-law attorney-client privilege as follows: (1) "a confidential communication;" (2) between a client or client representative and "a lawyer or his subordinate;" (3) "for the primary

---

[1] The work-product privilege may be overcome upon a showing of substantial need for the information. *See Blackmon v. Bracken Constr. Co., Inc.*, 338 F.R.D. 91, 97 (M.D. La. 2021) ("To overcome the privilege, Plaintiffs must show a substantial need for the information."). Here, Green has not met this standard.

purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis omitted).

The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co.*, 449 U.S. at 395. "[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) (Kavanaugh, J.) (collecting authority).

A party asserting the attorney-client privilege bears the burden of demonstrating its applicability. *See Robinson*, 121 F.3d at 974. "A general allegation of privilege is insufficient to meet this burden." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Instead, "[t]he proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id.*

\*\*\*

As mentioned above, it is undisputed that Marino testified that he conducted the internal investigation under the direction of Kroger's inside counsel to aid in preparing Kroger's Position Statement. Without a doubt, Marino's participation in the investigation under the direction of counsel necessarily satisfies the three elements of the federal common-law attorney-client privilege. *See Robinson*, 121 F.3d at 974. Green has not argued that any type of waiver applies. Accordingly, I find that the attorney-client privilege also applies in the case.

SIGNED this 11th day of April 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE